UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Robyn Rose Mazzone,

                              Plaintiff,

        v.

Commissioner of Social Security,

                              Defendant.

**Decision and Order**

18-CV-455 HBS
(Consent)

## I.   INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 6, pages hereafter cited in brackets), and familiarity is presumed. This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 10, 12.) In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the "Commissioner") that she was not entitled to Supplemental Security Income under Title XVI of the Social Security Act. The Court has deemed the motions submitted on papers under Rule 78(b).

## II.   DISCUSSION

"The scope of review of a disability determination . . . involves two levels of inquiry. We must first decide whether HHS applied the correct legal principles in making the determination. We must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted). When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion. *Id.*

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry, supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry then the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to review the plaintiff's residual functional capacity ("RFC") and the physical and mental demands of the work done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to past relevant work given the RFC. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

3

Here, plaintiff challenges the ALJ's decision not to grant more weight to her mental health treatment providers at the Dale Association. "Plaintiff received treatment at the Dale Association for her depression and anxiety starting in 2016. In November of that year, a counselor and a nurse practitioner at that organization had signed statements indicating that the Plaintiff would have serious limitations in functioning. The ALJ gave both opinions little weight. This was error." (Dkt. No. 10-1 at 10.) Plaintiff has elaborated further on the extent to which she had significant psychiatric symptoms that the ALJ ignored:

> LMHC Carey signed an opinion on November 17, 2016. Plaintiff was seen for counseling twice monthly, and psychiatric appointments bimonthly. Plaintiff had poor ability to follow rules, relate with co-workers, deal with the public, use judgment, interact with supervisors, function independently, and maintain attention, and understand simple instructions. She couldn't carry out detailed or complex instructions. Plaintiff's difficulty in remembering appointments was attributed to her illness. T. 392-396. NP Obot signed a note on November 29, 2016. Plaintiff had barriers to treatment, and was currently on valium and Lexapro. Plaintiff had poor ability to follow rules, relate with co-workers, deal with the public, use judgment, interact with supervisors, function independently, and maintain attention, and understand simple instructions. She couldn't carry out detailed or complex instructions. She had a poor ability to maintain appearance, behave in a stable manner, or demonstrate reliability, and only a fair ability to relate predictably in social situations. T. 506-510.

(*Id.* at 12.) The Commissioner responds that plaintiff has isolated the most favorable parts of the record from the Dale Association from the broader overall file:

> Over a year later, on January 18, 2016, Plaintiff sought formal treatment again for her mental health at Dale Association (Tr. 19, 363). Her mental status exam showed she was attentive with calm/quiet motor behavior (Tr. 19, 363). Her mood/affect were euthymic (Tr. 363). Her thought processes were coherent and logical (Tr. 19, 363). Her concentration was good with fair insight and judgment (Tr. 19, 363-64). Another mental status exam at Dale Association on June 27, 2016 showed Plaintiff was mildly anxious and a little withdrawn, but she was pleasant, cooperative, and in good control (Tr. 19, 377). Her speech was rational, coherent, and organized (Tr. 19, 377). By October 2016, Plaintiff's overall anxiety had decreased (Tr. 19, 385). Plaintiff also reported overall mental health stability with improvement of her symptoms since beginning medication management (Tr. 19, 387). This evidence, as the ALJ discussed supported Ms. Ransom's opinion that, while Plaintiff had some limitations, those limitations were not consistent with total

disability (Tr. 20). Substantial evidence supports the ALJ's conclusion to give this opinion significant weight (Tr. 20).

(Dkt. No. 12-1 at 22–23.)

The Commissioner has the better argument. Plaintiff first saw the Dale Association on January 18, 2016. At that time, plaintiff scored only mild impairments and needed only mild treatment goals that included coping skills. [369, 370.] The impairments and treatment goals remained approximately the same in May 2016. [379, 380.] *Cf. Boyd v. Colvin*, No. 3:14-CV-1316 (GLS), 2016 WL 866345, at *6 (N.D.N.Y. Mar. 3, 2016) (ability to develop coping skills weighed against disability determination). A psychiatric assessment of June 27, 2016 included a mental status examination that noted some symptoms but not to the extent that plaintiff is arguing now:

> She is mildly anxious, a little withdrawn, but she is pleasant, cooperative and in good control. Speech is rational, but not very productive, but coherent, organized. Affect is mildly anxious, but is appropriate with good range. There [are] no psychotic symptoms, no history of manic symptoms. She reports frequent anxiety attacks, but no full blown panic attacks. She is sad, depressed at times, but no serious clinical depressive symptoms and no suicidal thoughts. Her orientation and memory [are] okay. IQ is average. Patient's strength is she is seeking help, minimum past history. She has [a] stable relationship. Her weakness is significant hypertension for her age and poor response to SSRIs.

[381.] By October 26, 2016, plaintiff had an increase in anxiety and depression and had begun her application for disability benefits but otherwise reported "the usual steady anxiety or steady depression." [394.] The next visit was scheduled for November 23, 2016, but on November 17, 2016, a medical source statement of mostly checkboxes was prepared. [396–400.] The checkboxes suggested more severe impairments than the previous year of clinical notes. The checkboxes dated November 29, 2016 had the same problem. [510–14.] In contrast, the clinical notes from the Dale Association were more consistent with the psychiatric examination conducted by Dr. Christine Ransom on July 11, 2014:

5

> This individual can follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration for simple tasks, maintain a simple regular schedule and learn simple new tasks. She would have mild difficulty performing complex tasks, relating adequately with others and appropriately dealing with stress. Areas of difficulty are secondary to panic disorder, currently mild; major depressive disorder, currently mild. The results of the evaluation are consistent with mild psychiatric difficulties, which will not significantly interfere with the claimant's ability to function on a daily basis. There were no signs of any cognitive difficulty, which would interfere with the individual's functioning.

[312.] *Cf. Breinin v. Colvin*, No. 514CV01166LEKTWD, 2015 WL 7749318, at *15 (N.D.N.Y. Oct. 15, 2015) (no disability based on anxiety where "medical records generally noted Plaintiff to be alert, oriented, clear and coherent with good grooming, and intact attention, concentration, and memory skills"), *report and recommendation adopted*, No. 514CV1166LEKTWD, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015); *see also Shipp v. Colvin*, No. 16-CV-919 HBS, 2018 WL 4870748, at *3 (W.D.N.Y. Oct. 9, 2018) ("The remainder of the checkmarks in the questionnaire come with no explanation and are too conclusory to oppose a consistent medical record. The Second Circuit has held that such standardized form opinions are only marginally useful for purposes of creating a meaningful and reviewable factual record.") (internal quotation marks and citations omitted). Under the circumstances, substantial evidence supports the way in which the ALJ assessed plaintiff's mental health and assigned different weights to her clinical records.

Next, plaintiff challenges the ALJ's assessment of her back pain. "The Plaintiff had the severe impairment of lumbago. She testified to a need to alternate between sitting and standing due to her back pain, however, there were no opinions on the record regarding the Plaintiff's physical capabilities." (Dkt. No. 10-1 at 14.) Plaintiff emphasizes the severity of the symptoms that she reported over time:

> In the case at hand, the ALJ found that lumbago presented a severe impairment. T. 14. Plaintiff presented to the emergency room on November 5, 2014, with severe back pain and incontinence. T. 401-407, 408-413. A spine MRI showed mild arthropathy with mild disc bulges, borderline thecal sac narrowing at

6

> L3-4 and mild narrowing at L4-5. T. 419-420. Plaintiff reported Plaintiff had constant pain in her lower back exacerbated by lifting and standing; and which required her to need to be able to shift while standing and walking. T. 37. She could carry twenty pounds at most. T. 40. Plaintiff routinely complained of back pain to her primary care doctor, who prescribed Hydrocodone-Acetaminophen. She related being capable of performing her activities of daily living. T. 449-454, 455-459, 460-464, 465-469, 470-475, 476-482, 483-487, 488-492, 493-497, 498-504.

(*Id.* at 16–17; *see also* Dkt. No. 13 at 3.) The Commissioner emphasizes the plaintiff bears the burden of establishing her RFC and that her medical record simply contains no information contradicting an RFC of light work:

> When she started seeing a treatment provider at UFP [Urban Family Practice] in June 2015, Plaintiff stated she was independent with all her ADLs (Tr. 19, 451). Her musculoskeletal exam showed moderately limited ROM with pain, but her lower extremities showed no instability bilaterally (Tr. 19, 452). At a follow up at UFP on October 7, 2015, she had no problems with personal care and was independent with all ADLs (Tr. 19, 460-61). Her musculoskeletal exam showed full strength at 5/5 but with limited ROM (Tr. 19, 462). Her lower extremities showed no instability (Tr. 19, 462). On March 11, 2016, Plaintiff returned to UFP complaining of back pain and anxiety (Tr. 465). She continued to have no problems with personal care and was independent with her ADLs (Tr. 465-66). Her musculoskeletal exam showed moderately limited ROM with no instability in the lower extremities (Tr. 467). Plaintiff followed up at UFP on May 12, 2016, and examination findings remained the same as her prior appointment (Tr. 473). By July 2016, Plaintiff's physical exam remained the same (Tr. 485). Plaintiff continued to follow up in August 2016, and her medications were refilled (Tr. 488-92). Plaintiff returned to UFP on September 16, 2016, for a health maintenance visit (Tr. 493). She had no specific complaints and was working to improve her diet and improve her exercise routine (Tr. 493). She continued to be independent with all her ADLs (Tr. 494). By October 2016, examination findings and recommendations regarding her sciatica remained the same (Tr. 503). This evidence, as the ALJ discussed, supported the conclusion that the ALJ gave Plaintiff the benefit of the doubt that her lumbago was severe and that she could perform work at the light exertional level (Tr. 16-20).

(Dkt. No. 12-1 at 25–26.)

The Commissioner again has the better argument. Plaintiff had a normal MRI of the lumbosacral spine as recently as October and November 2014. [361–62, 424.] Doctors acknowledged the back pain that plaintiff was experiencing but could not trace it to a specific

7

physical origin.  [442, 456–57, 472.]  A clinical note from May 12, 2016 made only a brief reference to "moderately limited ROM" in the musculoskeletal spine.  The assessment, from Urban Family Practice, increased to a limited range of motion in June 2016 but then returned to a moderate limitation in July 2016.  [483, 489; *see also* 505 (October 2016).]  *Cf. Rhone v. Berryhill*, No. 116CV07213CMSDA, 2018 WL 1282823, at *8 (S.D.N.Y. Mar. 8, 2018) (RFC of light work supported by substantial evidence where, *inter alia*, plaintiff had "full ranges of motion in most extremities, the exception being limited flexion in [plaintiff]'s left ankle, as well as limited range of motion in his thoracic and lumbar spines").  Meanwhile, as the Commissioner has noted, plaintiff consistently was capable of activities of daily living and never reported an inability to carry out daily tasks.  Even plaintiff herself testified that her physical exertional limits fell within the regulatory definition of light work.  *Compare* [44] ("Q. And what do you think is the most you'd be able to lift?  A. Well, my daughter is 20 pounds and that's a lot on me.  Q. And are you able to carry things like groceries?  A. Not—somewhat.  Not—not more than 20 pounds, if that.  Q. And how often do you think you'd be able or are you able to lift that 20 pounds?  A. Not very often.  Q. So about how many times would you say you end up lifting or carrying your daughter in a given day?  A. Probably about—maybe maximum 10.") *with* 20 C.F.R. § 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.").  Under these circumstances, substantial evidence supports the conclusion that the only needed modifications to a finding of light work concerned plaintiff's mental health and not her physical exertion.

## III. CONCLUSION

The Commissioner's final determination was supported by substantial evidence. For the above reasons and for the reasons stated in the Commissioner's briefing, the Court grants the Commissioner's motion (Dkt. No. 12) and denies plaintiff's cross-motion (Dkt. No. 10).

The Clerk of the Court is directed to close the case.

SO ORDERED.

                                                                                       __/s Hugh B. Scott_____
                                                                                          Hon. Hugh B. Scott
                                                                                          United States Magistrate Judge

DATED: July 31, 2019